Thiago M. Coelho, SBN 324715
thiago@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
*Attorneys for Plaintiff and Proposed Class*

Arlene K. Kline (*PRO HAC Vice*)
Damien P. Delaney, SBN 246476
Zoe J. Bekas, SBN 288118
**AKERMAN LLP**
601 W. Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE BROOKS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PRESSED JUICERY, INC. a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>    Defendant(s). | CASE NO.:  2:19-CV-01687-KJM-CKD<br><br>The Hon. Kimberly J. Mueller<br><br>**NOTICE AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: May 06, 2022<br>TIME: 10:00 A.M.<br>COURTROOM: 3 |

*Left margin vertical text:* WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**NOTICE AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**
63276515;1

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on May 06, 2022, at 10:00 a.m., in Courtroom 3 of the above-captioned Court, located at 501 I Street, Sacramento, California, 95814, Plaintiff Valerie Brooks (herein "Plaintiff" or "Named Plaintiff"), on her own behalf and on behalf of the classes she represents, and Defendant Pressed Juicery, Inc. ("Defendant") (hereafter jointly "the Parties") will and hereby jointly do move for entry of an order:

1. Granting final approval of the Amended Class Action Settlement Agreement and Release (the "Settlement Agreement");

2. Certifying the Nationwide and California settlement classes, as defined below;

3. Finally approving Wilshire Law Firm, PLC as Class Counsel;

4. Finally approving the Named Plaintiff as Class Representative;

5. Finally approving the ultimate disposal of funds under the settlement;

6. Finally approving the payment of $35,000.00 to Wilshire Law Firm for attorney's fees; and

7. Finally approving the payment of $2,500.00 as an enhancement award to Plaintiff.

This motion is based on this Notice, the accompanying memorandum of points and authorities and the exhibits thereto, the papers and pleadings on file with the Court in this matter, and such other and further matters as may be brought to the Court's attention at or before the hearing of the motion.

Respectfully submitted,

Dated: April 29, 2022                                    **WILSHIRE LAW FIRM**

By: /s/ Thiago Coelho
    Bobby Saadian
    Thiago M. Coelho
    Attorneys for Plaintiff
    VALERIE BROOKS

(Signatures continued on next page)

CASE NO. 2:19-CV-01687-KJM-CKD

**NOTICE AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

63276515;1

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1

2   Dated:  April 29, 2022

**AKERMAN LLP**

3                                                         By: /s/ Arlene Kline_____
                                                              Arlene Kline (*Admitted Pro Hac Vice*)
4                                                             Damien P. DeLaney
                                                              Zoe J. Bekas
5                                                             Attorneys for Defendant
                                                              PRESSED JUICERY, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 2:19-CV-01687-KJM-CKD
**NOTICE AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**
63276515;1

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     FACTS .......................................................................................................... 2

   a.  Terms of the Settlement ...................................................................... 2

     i.  Injunctive Relief ........................................................................... 2

     ii.  Settlement Fund ............................................................................ 3

III.    PROCEDURAL HISTORY ............................................................................. 3

IV.     ARGUMENT ................................................................................................ 4

   a.  The Court Should Finally Approve the Settlement as to the Classes .............. 4

     i.  Reasonable Notice Was Provided to the Classes ............................... 6

     ii.  The Strength of Plaintiff's Case ...................................................... 7

     iii.  Risk, Expense, Complexity, and Likely Duration of Further Litigation ....... 8

     iv.  The Risk of Maintaining Class Action Status Throughout Trial ............. 9

     v.  Relief Offered in Settlement ......................................................... 10

     vi.  Extent of Discovery Completed and Stage of Proceedings ................. 11

     vii.  Experience and Views of Counsel .................................................. 12

     viii.  Presence of a Governmental Participant .......................................... 13

     ix.  Reaction of the Class Members to the proposed Settlement .............. 13

   b.  Plaintiff's Service Reward Request is Reasonable and Should be Granted ... 14

   c.  Plaintiff's Request for Attorneys' Fees and Costs is Reasonable and
     Should be Granted ............................................................................ 15

   d.  Final Certification of the Class Is Appropriate ...................................... 16

     i.  The Individuals in the Settlement Class Are So Numerous that Joinder
      Would be Impractical .................................................................. 17

     ii.  The Commonality Requirement Is Satisfied ................................... 19

     iii.  The Typicality Requirement Is Satisfied ........................................ 19

     iv.  The Adequacy Requirement Is Satisfied ....................................... 20

     v.  Rule 23(b)(2) Requirements ........................................................ 20

i

63276515;1

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**vi. Rule 23(b)(3) Requirements** ........................................................... 20

**V.      CONCLUSION** ................................................................................. 21

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

ii

**TABLE OF CONTENTS**

63276515;1

1

**TABLE OF AUTHORITIES**

2    <u>**Cases**</u>                                                                                          <u>**Pages**</u>

3    *Adoma v. Univ. of Phoenix, Inc.*,

4         913 F. Supp. 2d 964 (E.D. Cal. 2012) ......................................................7, 8, 11, 12

5    *Barbosa v. Cargill Meat Sols. Corp.*,

6         297 F.R.D. 431 (E.D. Cal. 2013) ..........................................................8, 10, 11, 12

7    *Benitez v. Western Milling, LLC*,

8         2020 WL 3412725, at *4 (E.D. Cal. June 22, 2020) .............................................5

9    *Boyd v. Bechtel Corp.*,

10        485 F.Supp. 610 (N.D. Cal. 1979) .......................................................................11

11   *Chalmers v. City of Los Angeles*,

12        796 F.2d 1205 (9th Cir. 1986) ..............................................................................15

13   *Chavez v. Netflix, Inc.*,

14        162 Cal.App.4th 43, 66, n.11 (2008) ...................................................................16

15   *Cotton v. Hinton*,

16        559 F.2d 1326 (5th Cir. 1977) ..............................................................................12

17   *Davy v. Paragon Coin, Inc.*,

18        2020 WL 4460446, at *5 (N.D. Cal. June 24, 2020) ...........................................17

19   *Der-Hacopian v. DarkTrace, Inc.*,

20        2020 WL 7260054, at *4 (N.D. Cal. Dec. 10, 2020) .............................................6

21   *Dunk v. Ford Motor Co.*,

22        48 Cal. App. 4th 1794 (1996) ...............................................................................17

23   *Entin v. Barg*, 412 F.Supp.

24        508 (E.D. Pa. 1976) ...............................................................................................10

25   *Franklin v. Kaypro Corp.*,

26        884 F.2d 1222 (9th Cir. 1989) .................................................................................4

27   *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*,

28        446 U.S. 318 (1980) ...............................................................................................17

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

iii

**TABLE OF AUTHORITIES**

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1988) .................................................4, 10, 12, 13, 19, 20

*Hernandez v. Cnty. of Monterey*,

    305 F.R.D. 132 (N.D. Cal. 2015).........................................................17

*In re Am. Bank Note Holographics, Inc.*,

    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................13

*In Re Armored Car Antitrust Litig.*,

    472 F.Supp. 1357 (N.D. Ga.1979) .......................................................10

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) .............................................................15

*In Re Four Seasons Secs. Laws Litig.*,

    58 F.R.D. 19 (W.D. Okla.1972)...........................................................10

*In re Immune Response Secs. Litig.*,

    497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................11

*In Re Sunrise Secs. Litig.*,

    131 F.R.D. 450 (E.D. Pa. 1990) .........................................................10

*In re Syncor Erisa Litig.*,

    516 F.3d 1095 (9th Cir. 2008) ............................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,

    720 F. Supp. 1379 (D. Ariz. 1989) ...................................................7, 15

*Knisley v. Network Assocs.*,

    312 F.3d 1123 (9th Cir. 2002) ...........................................................15

*La Fleur v. Medical Management Intern., Inc.*,

    2014 WL 2967475 at *7 (C.D. Cal., June 25, 2014) ..............................14

*Lerwill v. Inflight Motion Pictures, Inc.*,

    582 F.2d 507 (9th Cir. 1978) ............................................................20

*Lewis v. Starbucks Corp.*,

    2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008)............................11

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

iv

**TABLE OF AUTHORITIES**

63276515;1

*Linney v. Cellular Alaska P'ship,*

    151 F.3d 1234 (9th Cir. 1998) ......................................................5, 10

*Mandujano v. Basic Vegetable Products, Inc.,*

    541 F.2d 832 (9th Cir. 1976) ...............................................................6

*Miller v. CEVA Logistics USA, Inc.,*

    2015 WL 4730176, at * 8 (E.D. Cal. Aug. 10, 2015)............................16

*Monterrubio v. Best Buy Stores, L.P.,*

    291 F.R.D. 443 (E.D. Cal. 2013) .........................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004) ...........................5, 7, 10, 11, 12, 13

*Navellier v. Sletter,*

    262 F.3d 923 (9th Cir. 2001) .............................................................17

*Officers for Justice v. Civil Serv. Comm'n,*

    688 F.2d 615 (9th Cir. 1982) ...................................................4, 5, 10

*Ontiveros v. Zamora,*

    303 F.R.D. 356 (E.D. Cal. 2014) ....................................................7, 10

*Oppenlander v. Standard Oil Co.,*

    64 F.R.D. 597 (D. Colo. 1974) .............................................................8

*Parsons v. Ryan,*

    754 F.3d 657 (9th Cir. 2014) .............................................................20

*Rodrigues v. Hayes,*

    591 F.3d 1105 (9th Cir. 2011)............................................................20

*Rodriguez v. W. Publ'g Corp.,*

    563 F.3d 948 (9th Cir. 2009) .............................................................12

*Romero v. Producers  Dairy Foods, Inc.,*

    2007 WL 3492841, at *1-4 (E.D. Cal. Nov. 14, 2007)........................16

*Schaffer v. Litton Loan Servicing, LP,*

    2012 WL 10274679, *19 (C.D. Cal. Nov. 13, 2012)............................14

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

v

**TABLE OF AUTHORITIES**

*Serrano v. Priest*,

    20 Cal. 3d 25 (1977) ...................................................................................15, 16

*Silber v. Mabon*,

    18 F.3d 1449 (9th Cir. 1994) ...................................................................................6

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ...........................................................................5, 14

*The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust*,

    2016 WL 314400, at *6 (N.D. Cal. 2016) ...............................................................17

*Valenzuela v. Best-Line Shades, Inc.*,

    2021 WL 3514101, at *3 (N.D. Cal. Aug. 10, 2021) ...........................................17

*Van Lith v. iHeartMedia + Entm't, Inc.*,

    2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) ..........................................7

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) .........................................................................14

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) ...........................................................8, 11, 13, 16

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ...............................................................................15

*Wal-Mart Stores, Inc. v. Dukes*

    564 U.S. 338 (2011) ...............................................................................................19

*Wang v. Chinese Daily News, Inc.*,

    737 F.3d 538 (9th Cir. 2013) .................................................................................19

*Wershba v. Apple Computer, Inc.*,

    91 Cal.App.4th 224 (2001) .....................................................................................15

*Wren v. RGIS Inventory Specialist*,

    2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ...........................................5, 12

*Zinser v. Accuflix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001) ...............................................................................17

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

vi

**TABLE OF AUTHORITIES**

1

2

**Federal Rules**                                                    **Pages**

Fed. R. Civ. P. 23 .........................................................................6, 9, 19

Fed. R. Civ. P. 23(a) ...........................................................................17

Fed. R. Civ. P. 23(a)(1)........................................................................17

Fed. R. Civ. P. 23(a)(2) ........................................................................19

Fed. R. Civ. P. 23(b)(2) ..................................................................17, 20

Fed. R. Civ. P. 23(b)(3) ..................................................................20, 21

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................6

Fed. R. Civ. P. 23(e) ...............................................................................4

Fed. R. Civ. P. 23(e)(2) ...........................................................................5

Fed. R. Civ. P. 23(h) .............................................................................15

14

**Codes**                                                            **Pages**

42 U.S.C. § 12102.................................................................................1

17

**Reference Materials**                                              **Pages**

*Judicial Role in Reviewing a Proposed Class Action Settlement*,

    § 21.61 (4th ed. 2004)....................................................................4

*National Institute of Health*,

    NIH Record, June 3, 2016, Vol. LXVIII No. 12, Visual Impairment ...................18

23

24

25

26

27

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

**TABLE OF AUTHORITIES**

63276515;1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a class action alleging that Defendant Pressed Juicery, Inc. ("Pressed Juicery or Defendant") failed to have the proper tools in place to ensure its website, https://www.pressedjuicery.com/ (the "Website" or "Defendant's Website"), works for visually impaired users of screen readers. Accordingly, Plaintiff alleges that Defendant has violated the American with Disabilities Act ("ADA") and by extension, the Unruh Civil Rights Act ("Unruh Act"). This Class Action is pursued on behalf of two classes, a Nationwide Class defined as: "All individuals who (a) have a disability, as that term is defined under the Americans with Disabilities Act, the "ADA" 42 U.S.C. § 12102, and similar state and local disability laws, and (b) have accessed the Website and Mobile Applications (as those terms are defined in Dkt. 28-1) , and (c) have been denied equal access as a result of their disability", and a California Class defined as "All individuals in the State of California who (a) have a disability, as that term is defined under the ADA and similar state and local disability laws, and (b) have accessed the Website and Mobile Applications, and (c) have been denied equal access as a result of their disability. Both the Nationwide and California Classes are limited to individuals who attempted to access the Website and Mobile Applications between September 30, 2018 and September 30, 2021.

This Honorable Court granted preliminary approval to the proposed settlement and approved conditional certification of the settlement classes in an Order dated September 30, 2021, finding preliminarily that the classes as defined in the Settlement Agreement meet all of the requirements for certification of a settlement class found in the Federal Rules of Civil Procedure and applicable case law, that the proposed settlement falls within the range of reasonableness for potential final approval, and is the product of arm's length negotiations by experienced. Dkt. 28-1. Moreover, pursuant to the Court's Order, counsel for Pressed Juicery published notice with the American Council of the Blind on October 20, 2021, https://acb.org/notice-proposed-settlement-class-action-and-fairness-hearing-1, and counsel for Pressed Juicery also published notice with the Los Angeles Radio Reader Service, which read a short form of the notice on air

1

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

two times a day from November 12, 2021 through November 18, 2021, and the full notice twice on November 19, 2021.

Moreover, on February 11, 2022, the Court continued the Final Fairness Hearing to May 06, 2022, for the Parties broaden the reach of the notice published to the conditionally certified Class Members. Subsequently, an updated Court-approved Notice was sent out to 741 organizations for blind and visually impaired people, and published in the following newspapers: the Washington Post (published on March 18, 2022), Dallas Morning News (published on March 3, 2022, as well as published electronically for 30 days starting on 3/21/22),, the Las Vegas Review (published on March 2, 2022 and March 22, 2022), the Austin American Statesmen (published on March 3, 2022 and March 21, 2022), the San Jose Mercury News (published on March 3, 2022 and March 25, 2022), and the San Diego Union Tribune (published on March 19, 2022).

When the benefits of the Settlement are balanced against the inherent risks of continued, protracted litigations, including potential defeat at certification, on the merits and/or on appeal, the fairness, adequacy, and reasonableness of the proposed settlement is clear. Accordingly, the Parties respectfully requests that this Court grant final certification of the Class and final approval of the Settlement and enter the proposed order of Final Approval and Final Judgment submitted herewith.

## II.    FACTS

### a.    Terms of the Settlement

#### i.    Injunctive Relief

The Settlement Agreement provides that Defendant, subject to limited exceptions, shall modify the Website and Mobile Applications to provide accessibility and to provide individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website and Mobile Applications by modifying the Website and Mobile Applications in accordance with the Web Content Accessibility Guidelines ("WCAG") 2.0. Dkt 28-1 at p.4.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

CASE NO. 2:19-CV-01687-KJM-CKD
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
63276515;1

### ii.    Settlement Fund

The Settlement Agreement provides for a $112,500.00 settlement fund to be paid by Defendant, which will, after deductions for attorneys' fees of $35,000.00, litigation costs, and a service award for the Class Representative of $2,500.00, be paid out to Class Members who make timely claims by showing proof of browsing history or signing a certification under penalty of perjury that they encountered barriers to access which prevented them from accessing the services and/or goods of Pressed Juicery's business in a full and equal manner to sighted individuals.

Plaintiff, pursuant to the Court's Order (Dkt. No. 36) has submitted a declaration from Plaintiff describing in detail her contribution to the case to ultimately justify the incentive award. *See* Dkt. 37-1.  Pursuant to that same Order, Plaintiff has also submitted a Statement of Attorneys' Fees and Costs, along with an affidavit by her attorneys, supporting the appropriateness of the payment requested for Plaintiff's attorneys' fees.  *See* Dkt No. 37 and 37-2.

## III.    PROCEDURAL HISTORY

On August 28, 2019, Plaintiff filed a Class Action Complaint alleging that Defendant's Website is not fully or equally accessible to blind and visually impaired consumers in violation of the Americans with Disabilities Act of 1990 (the "ADA") and the California Unruh Civil Rights Act (the "Unruh Act").  The Complaint seeks injunctive relief, statutory damages, attorneys' fees, and expenses.  After arm's length negotiations between counsel, the Parties agreed to an initial settlement, which was preliminarily approved on September 16, 2020, (Dkt. 24) and notice to the Class Members went out by September 25, 2020.  Subsequently, the Parties, after receiving feedback from one non-profit organization, National Federation for the Blind, purportedly on behalf of the Class Members, came to a new settlement with all the same terms as the Court previously approved, but with an increased $112,500.00 settlement fund and filed a Joint Renewed Motion for Preliminary Approval of Amended Class Action Settlement and Conditional Certification of Settlement Classes. Dkt. 28-1.  Of the $112,500.00, the Parties proposed up to $35,000.00 be awarded to class counsel for attorneys' fees and costs, and $2,500.00 to the Named Plaintiff.  The Parties proposed the remaining $75,000.00 will be distributed to Class Members who make timely claims demonstrating attempts to use the

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Defendant's Website or Mobile Applications, and that each Class Member will be entitled to a share proportional to the number of valid claimants, but California Class Members may receive up to three times their pro-rata share not to exceed $1,000.00. On September 30, 2021, the Court granted the Parties Motion for Preliminary Approval, noting that the additional settlement fund did not increase the attorneys' fees nor the Named Plaintiff's award that the Court preliminarily approved in its prior Order (Dkt. 33), and thus, did not change its prior holding that the proposed settlement is sufficiently fair and equitable.

## IV.     ARGUMENT

### a.     The Court Should Finally Approve the Settlement as to the Classes.

A class action may not be settled without Court Approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval; (2) notice to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiation between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
63276515;1

1   district court was wrong in concluding otherwise." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th

2   Cir. 2003).

3       In deciding whether to approve a proposed class action settlement, the Court must find

4   that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers*

5   *for Justice*, 688 F.2d at 625.

6       In determining whether a settlement is "fundamentally fair, adequate, and reasonable,"

7   the district court must "balance[e] ... several factors which may include, among others, some or

8   all of" the following: (1) "the strength of plaintiffs' case," (2) "the risk, expense, complexity, and

9   likely duration of further litigation," (3) "the risk of maintaining class action status throughout

10  the trial," (4) "the amount offered in settlement," (5) "the extent of discovery completed," (6)

11  "the stage of the proceedings," (7) "the experience and views of counsel," (8) "the presence of a

12  governmental participant," and (9) "the reaction of the class members to the proposed

13  settlement." *Benitez v. Western Milling, LLC*, No. 1:18-CV-01484-SKO, 2020 WL 3412725, at

14  *4 (E.D. Cal. June 22, 2020) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th

15  Cir. 1998)) (citation omitted). "Ultimately, the district court's determination is nothing more than

16  an amalgam of delicate balancing, gross approximations and rough justice." *Id. (quoting Officers*

17  *for      Justice*,      688      F.2d      at      625)      (citation      omitted); *see*

18  *also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[

19  D]istrict courts have wide discretion in assessing the weight and applicability of each

20  factor." (citation omitted)).

21      Importantly, courts apply a presumption of fairness "if the settlement is recommended by

22  class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialist*, No. C-06-05778

23  JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also a "strong judicial policy

24  that favors settlements, particularly where complex class action litigation is concerned. *In re*

25  *Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court

26  should find that the Settlement is fair, reasonable, and adequate, and finally approve it with

27  respect to the Classes.

28  ///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd. 12th Floor
Los Angeles, CA 90010-1137

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
63276515;1

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### i.    Reasonable Notice Was Provided to the Classes

Rule 23 of the Federal Rules of Civil Procedure requires that the Classes receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice of a class action settlement is adequate under Rule 23 where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). Notably, Rule 23 "does not require that each class member actually receive notice." *Der-Hacopian v. DarkTrace, Inc.*, No. 18-CV-06726-HSG, 2020 WL 7260054, at *4 (N.D. Cal. Dec. 10, 2020), *citing Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice). As this Court has already granted preliminary approval of the Settlement and approved the Notice and notice plan (*See* Dkt. No. 32; *see also* Dkt. No. 44), the sole remaining issue is whether notice was adequately provided to the Classes.

The notice plan, as approved by the Court, has been fully implemented by the Parties and the CPT Group, Inc. ("CPT"), the Claims Administrator for this action. Pursuant to the Court's initial September 16, 2020 Order granting Preliminary Approval, counsel for Defendant caused Court-approved Class Notice to be published with the American Council of the Blind and the Los Angeles Radio Reader Service. Declaration of Arlene Kline ("Kline Decl.") at ¶¶3-4. Following this Court's September 30, 2022 Order granting Preliminary Approval, CPT further caused Notice to be emailed to 741 organizations who represent disabled persons. Declaration of Alejanda Zárante of CPT Group, Inc. ("CPT Decl.") at ¶7; *see also* Exh. B. CPT also set up a settlement website to provide Class Members with information pertaining to the proposed Settlement and allow the Class Members to file a claim electronically. *Id.* at ¶5. Counsel for Defendant further caused Notice to be published in the following newspapers: the Washington Post, the Dallas Morning News, the Las Vegas Review-Journal, the Austin American Statesmen, the San Jose Mercury News, and the San Diego Union Tribune. Kline Decl. at ¶5. The Parties have carried out Notice Program as approved by this Court, and accordingly, the best practicable notice has been adequately provided to the Classes.

As of April 29, 2022, the deadline for timely claims and objections, the Parties have received 13 claims. To the extent of the Parties' knowledge, no Class Member has validly objected to the Settlement, and no Class Member has validly requested exclusion from the settlement.[1] CPT Decl. at ¶¶9-10.

### ii. The Strength of Plaintiff's Case.

"An important consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 369 (E.D. Cal. 2014) (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526). "When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989)). "The court cannot reach such a conclusion . . . because evidence has not been fully presented." *Id.* (citation omitted). "Instead, the court is to evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.* (citation omitted). Accordingly, where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's case" factor "weighs in favor" of final approval of the Settlement. *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017).

While Plaintiff and her counsel naturally believe that there is evidence from which the Court could rule in favor of Plaintiff's claims, there exist real concerns as to the viability of her case at trial. These include, but are by no means limited to, the fact that certification and success on the merits at trial would require establishment of Plaintiff's claims, namely, that the Website violated the ADA and the Defendant violated the Unruh Act by discriminating against individuals with visual impairments. A trier of fact may very well determine, after reviewing an analysis of the Website, that it works adequately enough with screen-reading software to be ADA compliant.

---

[1] Should the Parties subsequently become aware of any valid objections or requests for exclusion following the filing of this Motion, they shall promptly notify the Court accordingly.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

This concern is compounded by the fact that the Department of Justice has not promulgated regulations concerning whether, when, or how a website is ADA compliant. Thus, this action at trial will inevitably become a battle of the experts, and a jury could plausibly and reasonably find in favor of Defendant, leaving Plaintiff and the Classes with no recovery or relief.

In contrast, the Settlement provides guaranteed injunctive relief to the Class by requiring Defendant to take actions to remediate its Website and Mobile Applications, as well as guaranteed monetary relief in the form of a settlement fund for Class Members who make timely claims. Balancing these merits against the strength of Plaintiffs' case, this factor favors final approval.

### iii. Risk, Expense, Complexity, and Likely Duration of Further Litigation.

"Another relevant factor is the risk of continued litigation against the certainty and immediacy of recovery from the [s]ettlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Adoma*, 913 F. Supp. 2d at 976. "A court may 'consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.'" *Vasquez*, 266 F.R.D. at 489 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

Here, the risk and expense of inherent in continued litigation of this action is obvious. Absent final approval, the Parties would be required to continue litigation, which necessarily would involve significant discovery, including expensive expert discovery (which has yet to commence), a motion for class certification which Defendant would surely contest, and other dispositive motions such as a motion for summary judgment and possible appeals. Once all is said and done, the ultimate recovery might be of no greater value – and indeed, may even be of lesser value – to Class Members than those offered in the Settlement Agreement. Accordingly, this factor heavily weighs in favor of approval. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (finding that this factor favored approval where "there

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    remained significant procedural hurdles for the putative class to confront, including certification"

2    and "there were significant risks in continued litigation and no guarantee of recovery").

3        **iv.    The Risk of Maintaining Class Action Status Throughout Trial.**

4        The risk of decertification of the class before trial favors final approval because, while the

5    parties maintain that the requirements of Rule 23 are satisfied and that certification is appropriate

6    for settlement purposes, there nonetheless exist significant hurdles which may impede a motion

7    for class certification by Plaintiff should final approval not be granted.

8        For instance, Defendant might hypothetically be able to point to evidence evidencing a

9    range of individual competence in using screen-readers among the Class Members, and that only

10    Class Members who fell below a certain threshold of competence encountered barriers to access

11    to Defendant's Website and Mobile Applications, which could create individualized issues which

12    militate against certification.

13        Defendant might also argue that the diversity of screen-readers available to consumers,

14    including but not limited to Jobs Access with Speech ("JAWS"), NVDA, VoiceOver, and

15    Talkback, as well as the fact that Class Members most likely used different internet browsers,

16    create additional individualized issues which tend to weigh against certification.  Defendant might

17    present evidence that differences among the screen-readers and internet browsers led some Class

18    Members to experience barriers to use, while others did not.

19        Other individualized issues may arise where Defendant alleges that the Class Members

20    did not all use the Website and Mobile Applications in the same manner or share the same

21    purposes.  It is possible that only certain Class Members visiting the Website and Mobile

22    Applications for certain purposes would have encountered meaningful barriers to use under the

23    ADA, while other Class Members visiting the Website and Mobile Applications for different

24    purposes did not. Additionally, the fact that the Website and Mobile Applications were updated

25    periodically during the class period may also create additional individualized issues should those

26    updates have remedied or added barriers to use.

27        Accordingly, this factor favors final approval.

28    ///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

9
CASE NO. 2:19-CV-01687-KJM-CKD
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
63276515;1

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

### v. Relief Offered in Settlement.

The next factor is the relief offered by the Settlement. "In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Ontiveros*, 303 F.R.D. at 370. "[A] proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (citation omitted). Indeed, "[i]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* at 527; *See also, e.g.*, *Officers for Justice*, 688 F.2d at 623.[2]

Here, the Settlement provides Class Members with meaningful injunctive relief, as well as a $112,500.00 settlement fund for which Class Members who make timely claims can recover from. Of that settlement fund, $75,000.00 is to be set aside for distribution to Class Members who make timely claims demonstrating attempts to use the Defendant's Website or Mobile Applications, with each Class Member entitled to a share proportional to the number of valid claimants (but California Class Members may receive up to three times their pro-rata share not to exceed $1,000.00). Class Members would be directly compensated in cash, not vouchers or coupons. Any remaining funds from the settlement will be contributed to a *Cy Pres* to the Los Angeles Radio Reading Service. In addition, the injunctive relief directly addresses the harm suffered by the Class Members, as it substantially improves the accessibility of Defendant's Website and Mobile Applications using screen-reading software. While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *see also Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been

---

[2] *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

better…does not mean the settlement presented was not fair, reasonable, or adequate."). The Settlement provides guaranteed and substantial relief to Class Members, whilst avoiding the uncertainty and foreseeable pitfalls of litigation. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### vi.    Extent of Discovery Completed and Stage of Proceedings.

As to the factors pertaining to the extent of discovery completed and the stage of proceedings, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Adoma,* 913 F. Supp. 2d at 977 (quoting *DIRECTV,* 221 F.R.D. at 528). The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979). However, formal discovery having occurred is not a requirement to settlement, and in fact, Courts have found that informal discovery is sufficient so long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases." *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013)("While the parties did not fully complete discovery prior to settlement negotiations, but rather engaged in a process of informal discovery, approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.")(citing *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)); *cf. Vasquez,* 266 F.R.D. at 489 (finding that the parties engaged in sufficient discovery where the plaintiffs "conducted significant discovery of the underlying . . . documents in [the] case" and conducted interviews of "numerous" members of the potential class). Stated another way, "[w]hat is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa*, 297 F.R.D. at 447 (citation omitted).

The Parties engaged in an informal information exchange and discovery to enable both sides to assess the claims and potential defenses in this action. Declaration of Thiago M. Coelho ("Coelho Decl."). at ¶¶8-9. Plaintiff's counsel hired an expert to create a report detailing the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Website's barriers and obtained additional information from Plaintiff as to her experience with the Website —in addition to vigorously conducting their own investigation.  *Id.*  Plaintiff's counsel then met and conferred with counsel for Defendant and allowed Defendant to investigate Plaintiff's evidence.  *Id.*  Accordingly, the Parties were each able to accurately assess the legal and factual issues that would arise if the case proceeded to trial.  *Id.* at ¶¶9-10.  Resultingly, the Parties decided it would be in their best interests to settle this action and negotiated the Settlement.  *Id.*.  In reaching this settlement, Plaintiff's counsel relied on their substantial litigation experience in litigating and negotiating similar ADA actions.  *Id.* at ¶5.

Here, the Parties conducted sufficient informal discovery in this action prior to reaching the Settlement, and accordingly, this factor favors final approval.

### vii.    Experience and Views of Counsel.

The Ninth Circuit places "a good deal of stock in the product of arms-length, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*citing Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 625).  Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining.  *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14.  "In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."  *Barbosa*, 297 F.R.D. at 447 (citation omitted).  "Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation."  *Adoma*, 913 F. Supp. 2d. at 977 (citation omitted).  "This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *Id.* (citation omitted).  "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Plaintiff's counsel has extensive experience in litigating ADA class actions.  *Id.* at ¶5.  Plaintiff's counsel evaluated the case, considered the defenses that would be raised and, although Plaintiff's counsel thought her case was meritorious at all times, ultimately concluded that

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

12
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
63276515;1

settlement was the best option. *Id.* at ¶8. Taking all issues counsel had identified in consideration, as well as the inherent risks and costs of this litigation, including the challenges of obtaining class certification and defeating a potential summary judgment motion, as well as the ultimate burdens of proof, Plaintiff's counsel determined that the offered settlement was indeed fair, reasonable and adequate to the Class Members. *Id.* Communications between counsel always were adversarial, non-collusive and at-arm's-length. *Id.* at ¶9. The resulting proposed Settlement Agreement is the product of hours of such arm's length negotiations. *Id.* Accordingly, this factor weighs in favor of final approval.

### viii.    Presence of a Governmental Participant.

As this case does not involve a governmental participant, this factor does not apply.

### ix.    Reaction of the Class Members to the proposed Settlement.

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Vasquez*, 266 F.R.D. at 490 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528). "Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable." *Barbosa*, 297 F.R.D. at 448 (citation omitted). Indeed, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (collecting cases); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (internal quotation marks and citation omitted)).

Here, to date, the Parties are not aware of a single Settlement Class Member who, validly through the proper forum, has objected to the Settlement, nor are they aware of a single Settlement Class Member who, validly through the proper forum, has opted out of the Settlement. CPT Decl. at ¶¶9-10. Accordingly, the reaction of the Settlement Classes should be considered favorable. *Hanlon*, 150 F.3d at 1027 (That a class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

13

To address the undispersed remainder of the Settlement Fund, the Parties have elected to add a *Cy Pres* provision to the Settlement Agreement. To that end, the Parties have selected the Los Angeles Radio Reading Service to act as a *Cy Pres* to the Settlement Agreement. Coelho Decl. at ¶11. Accordingly, this factor favors Settlement.

**b. Plaintiff's Service Reward Request is Reasonable and Should be Granted**

Service awards for named Plaintiffs are common in class action litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving a service award of $50,000.00). "An incentive award is appropriate where…the class representatives remained fully involved and expended considerable time and energy during the course of the litigation." *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, *19 (C.D. Cal. Nov. 13, 2012)(internal citation omitted).

Plaintiff Valerie Brooks request for a service award of $2,500 is reasonable, as it is well below the amount Courts in this Circuit generally approve for class representatives. *See, e.g., La Fleur v. Medical Management Intern., Inc.*, No. EDCV 13-00398-VAP, 2014 WL 2967475 at *7 (C.D. Cal., June 25, 2014)( "Courts have generally found that $5,000 incentive payments are reasonable."). The requested service award is intended to compensate Plaintiff for the critical role she has played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. Coelho Decl. at ¶15. In agreeing to serve as a Class Representative, Plaintiff formally agreed to accept the responsibilities of representing the interests of all Class Members. *See*, Dkt. 37-1 at ¶¶4-6. Plaintiff ensured she had no conflicts of interest with any other member of the Classes, and fully understood her role and responsibilities as a class representative. *Id.* Plaintiff was fully involved in and expended considerable time and energy in furtherance of this action, including active communication with and a review of the documents prepared by her attorneys in this action. *Id.* Accordingly, Plaintiff's service award request is reasonable, and Plaintiff respectfully requests that the Court grant her request.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

14

**c. Plaintiff's Request for Attorneys' Fees and Costs is Reasonable and Should be Granted**

Pursuant to Federal Rules of Civil Procedure 23(h), the Court may award reasonable attorney's fees and nontaxable costs "authorized by law and by agreement of the parties." Under California law, a Court is empowered to award reasonable attorney's fees and costs when a litigant proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons. *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). If a negotiated class action settlement includes an award for attorney's fees, that fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002).

Here, Plaintiff has negotiated a Settlement which provides Class Members with substantial injunctive and monetary relief, and thus, her request for reasonable attorney's fees of $35,000.00 to be awarded to Class Counsel is merited.

There are two methods of calculating attorneys' fees in civil class actions: (1) the lodestar/multiplier method, and (2) the percentage of recovery method. *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 254 (2001); *see also Vizcaino,* 290 F.3d at 1047 (citing *In re Wash. Pub. Power Supply Sys. Litig.,* 19 F.3d 1291, 1295–96 (9th Cir.1994)). The district court has discretion in common fund cases to choose either method. *Vizcaino*, 290 F.3d at 1047. Plaintiff's fee request is justified under either method, as Class Counsel has obtained an excellent result for the Class after thorough investigation, litigation and negotiation of the Settlement, and Class Counsel has expended a substantial amount of work on the case. Coelho Decl., ¶13; *see also* Dkt. No. 37-2.

Plaintiff's fee request is reasonable under the lodestar method. The lodestar figure is calculated by multiplying the hours spent on the case by the reasonable hourly rates for the region and attorney experience. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Here, pursuant to the Court's February 8, 2022 Order, Plaintiff already has submitted a lodestar of Class Counsel's hours and costs in litigating this action, which total

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

$35,535.00 in fees and $2,289.66 in costs. *See* Dkt. 37-2. Class Counsel's hours spent on this action are reasonable, as Class Counsel expended a significant amount of time investigating, litigating and negotiating the Settlement to achieve an excellent result on behalf of the Classes. Coelho Decl. at ¶13. Class Counsel's hourly rate is fair and reasonable given his extensive expertise in litigating complex ADA class actions. Coelho Decl. at ¶12. Further, if the Court grants final approval, Class Counsel will spend additional time monitoring administration of the Settlement following final approval. Coelho Decl., ¶13.

Plaintiff's fee request is also reasonable under the percentage of recovery method. California courts have long awarded attorney's fees as a percentage of the benefit created by counsel in pursuing claims on behalf of a class. *Serrano*, 20 Cal.3d at 34 ("when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund.") In class actions, the custom and practice is to award approximately one-third of a settlement fund as a fee award. *See, e.g. Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at * 8 (E.D. Cal. Aug. 10, 2015)("California district courts usually award attorneys' fees in the range of 30-40%..."); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010)(approving a fee award of 33.33%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *1-4 (E.D. Cal. Nov. 14, 2007)(approving a fee award of 33.33%). Here, the Settlement provides Class Members a settlement fund of $112,500.00. Plaintiff's requested fee of $35,000.00 is approximately 31% of that fund, which is well within the one-third proportion typically awarded in class section settlements.

Accordingly, Plaintiff's fee request is in line with the prevailing guidelines established in California caselaw and is consistent with awards typically granted in California. Accordingly, Plaintiffs respectfully request that the Court approve the attorney's fees negotiated by the Parties and requested here.

### d. Final Certification of the Class Is Appropriate

Courts have broad discretion to certify a class for purposes of a class action settlement.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd. 12th Floor
Los Angeles, CA 90010-1137

16

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

1    *Zinser v. Accuflix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001); *Dunk v. Ford Motor*

2    *Co.*, 48 Cal. App. 4th 1794, 1807 (1996) n. 19 (holding certification in settlement cases is subject

3    to a "lesser standard of scrutiny")**;** *see also Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001).

4    Plaintiff proceeds under Rule 23(a) and Rule 23(b)(2).    Under Rule 23(a), Plaintiff must

5    demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2)

6    there are questions of law or fact common to the class; (3) the claims or defenses of the

7    representative parties are typical of the claims or defenses of the class; and (4) the representative

8    parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

9          Under Rule 23(b)(2), which is applicable to cases in which the main relief is an injunctive

10    remedy, Plaintiff must also show that "the party opposing the class has acted or refused to act on

11    grounds that apply generally to the class[.]"  For the purposes of the Settlement, the Parties agree

12    that all of these criteria are satisfied under the lesser standard of scrutiny applicable here.

13                    **i.    The Individuals in the Settlement Class Are So Numerous that**

14                          **Joinder Would be Impractical.**

15          Under Rule 23(a), a proposed class must be "so numerous that joinder of all members is

16    impracticable." Fed. R. Civ. P. 23(a)(1).  There is no exact threshold number that must be met to

17    meet this requirement; rather the rule "requires examination of the specific facts of each case and

18    imposes no absolute limitations." *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity*

19    *Comm'n*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  A class with more than 40

20    members "raises a presumption of impracticability [of joinder] based on numbers alone."

21    *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015).  In fact, courts in this

22    Circuit have found that "as few as 25 class members" is enough to "render joinder impracticable[.]

23    *See Valenzuela v. Best-Line Shades, Inc.*, 2021 WL 3514101, at *3 (N.D. Cal. Aug. 10, 2021)

24    (citing *Davy v. Paragon Coin, Inc.*, 2020 WL 4460446, at *5 (N.D. Cal. June 24, 2020) (citation

25    omitted).    In analyzing numerosity "a court may make common-sense assumptions and

26    reasonable inferences." *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust*, 2016

27    WL 314400, at *6 (N.D. Cal. 2016).

28          While Plaintiff has not specifically identified the Class Members, available data suggests

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

that they are in fact numerous, and Defendant does not dispute that contention for the purposes of this motion. The available data indicates that the California Class alone meets this requirement, which of course entails that the Nationwide Class does too. Plaintiff, consulting www.similarweb.com, has determined that 201 to 280 persons may have visited Defendant's Website in September of 2021. *See* Dkt. 28-1 at p.16. 90.73% of those persons were Americans; accordingly, 182,621 Americans visited Defendant's Website on that month. *Id*. To determine, from that figure, the number of blind persons who use screen-reading software to visit the Website or Mobile Applications, Plaintiff first noted that as of 2016, the Pew Research survey estimated that 77% of Americans with a disability go online. *Id*. Given that the percentage of Americans who go online, via desktop, laptop, or phone, is increasing over time, and the likelihood that a blind person would use screen-reading software given its general availability, Plaintiff conservatively estimates that 70% of blind and visually impaired Americans use screen-reading software to experience the internet. *Id*. To determine the number of legally blind persons living in California, Plaintiff found data showing that 797,300 Californians have a visual disability, out of 7,894,900 in the U.S. population. https://www.nfb.org/resources/blindness-statistics. *Id*. Accordingly, 10% of visually impaired Americans live in California. 1.02 million Americans were legally blind in 2015. *See National Institute of Health*, NIH Record, June 3, 2016, Vol. LXVIII No. 12, Visual Impairment, Blindness Cases in U.S. Expected to Double by 2050, *available at* https://nihrecord.nih.gov/sites/recordNIH/files/pdf/2016/NIH-Record-2016-06-03.pdf, p. 10. Dividing the number of U.S. visitors to the Website by the total U.S. population, 331,449,281 according to U.S. Census data, gives us a percentage of Americans who visited the Website. The figure is .00058%. Multiplying 70% (the percentage of blind and visually impaired persons who use screen-readers) times 1.02 million legally blind Americans gives us 71,400 legally blind Americans who use the internet. Multiplying that figure, the percentage of blind and visually impaired persons who use screen-readers, times the percentage of Americans who visited the Website or Mobile Applications in a month, or .06%, gives us 43 monthly visitors. As the Class Period extends from September 30, 2018 through September 30, 2021, that provides an estimated 1,548 total Class Members, which more than satisfies numerosity.

### ii.    The Commonality Requirement Is Satisfied.

To demonstrate commonality, Plaintiff must show that there are common questions of law or fact at stake whose answers are apt to drive the resolution of the case, but does not necessarily require a showing of a substantial number of those common questions. *See Wal-Mart Stores, Inc.* 564 U.S. at 350; *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient[.]").  In fact, the Ninth Circuit has held that "[s]o long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (citation omitted).  Here, common questions arise from the fact that each Class Member went to the same web address and encountered closely similar if not completely identical websites, the only differences resulting from any updates which may have occurred during the class period.  Thus, the primary question at stake, which is common to the class and apt to produce common answers which drive the case's resolution, is, "Is the website compatible with screen-reading software?"

### iii.    The Typicality Requirement Is Satisfied.

Rule 23's permissive standard for typicality is satisfied so long as the class representative has injuries similar to those of the unnamed Class Members that result from the same course of conduct.  There is no requirement that Named Plaintiff's claims be identical to that of the unnamed Class Members.  *See Hanlon*, 150 F.3d at 1020 ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent Class Members; the need not be substantially identical.").  Although the Classes are inclusive of individuals with all types of disabilities, and Plaintiff has one specific disability, blindness, that does not mean that Plaintiff's claims are not typical, because the case identifies just one source of injury for any disabled person, which are the barriers which prevent the Website and Mobile Applications from working with screen-readers.  Plaintiff alleges injuries which are typical of the Classes because Plaintiff and each Class Member were denied the full functionality of the Website and Mobile Applications, and that is the source of their injuries.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

63276515;1

#### iv.    The Adequacy Requirement Is Satisfied.

The adequacy requirement is met if Named Plaintiff and her counsel: (1) do not have any conflicts of interest with other Class Members; and (2) will vigorously prosecute the case on behalf of the class. *Hanlon*, 150 F.3d at 1020 (*citing Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Here, Named Plaintiff's interests in prosecuting her Class Action and obtaining the most beneficial recovery possible is fully compatible with the Nationwide and California Class Members' interests. Any Class Member who determines that he or she wishes to be excluded from the Settlement has had full opportunity to do so. Class counsel is highly experienced in class action litigation and in ADA class actions involving websites. Thiago Coelho has prosecuted over a hundred such cases, many of which led to positive settlements and improved website access to disabled individuals. Coelho Decl., at ¶5. Named Plaintiff has chosen her counsel while being well informed of their skills.

#### v.    Rule 23(b)(2) Requirements

Class certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirements of Rule 23(b)(2) are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014)(citing *Rodrigues v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2011)).

Here, the primarily relief provided by the Settlement is exactly that type of uniform relief. *See* Dkt. No. 28-1 at p. 6-7. Per the terms of the Settlement negotiated by Plaintiff, Defendant will modify their Website and Mobile Applications to improve their readability using screen reading software, such that they will be better viewable by the Class Members. *Id.* The settlement provides uniform injunctive relief to the Class, and thus, the requirements of Rule 23(b)(2) have been unquestionably met.

#### vi.    Rule 23(b)(3) Requirements

Finally, class certification under Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Under the lesser standard of scrutiny applicable in settlement cases, the Parties agree for the Settlement only that relief to be recovered by the Settlement Class would be based on common questions of law and fact – namely, their experiences as individuals with disabilities in accessing the Website.  Here, a common question, whether the Website and Mobile Applications work with screen-reading software, dominates the litigation as the central question, and predominates over individual issues because it will dictate whether the ADA and the Unruh Act were violated, and can be determined on a class-wide basis, by an expert report as to the workings of the Website and Mobile Applications.  Individual questions as to damages cannot defeat predominance.  The Parties further agree that a class action is superior to other methods of efficient adjudication, because, for example, any Nationwide Class Member who prefers to opt out of the Settlement, can do so, and the cost of litigation for an individual plaintiff would be prohibitive as compared to the amount of an individual recovery, which could be nothing.

## V.     CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court grant final certification of the Class and final approval of the Settlement reached in this matter and enter the proposed order and judgment accordingly.


Dated:  April 29, 2022                              **AKERMAN LLP**


                                    By: */s/ Arlene Kline*_____
                                        Arlene Kline
                                        Damien P. DeLaney
                                        Zoe J. Bekas
                                        Attorneys for Defendant
                                        PRESSED JUICERY, INC.


(Signatures continued on next page)

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
63276515;1

Dated: April 29, 2022

**WILSHIRE LAW FIRM**

By: /s/ *Thiago Coelho*
      Thiago M. Coelho, Esq.
      Attorneys for Plaintiff
      VALERIE BROOKS